# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HARVEY DUSSEAU,

        Plaintiff,        CASE NO. 06-CV-12370

-vs-        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

GORDON LARAMIE & SONS, INC.,

        Defendant.
_____/

## OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Gordon Laramie & Sons, Inc.'s ("Defendant") June 28, 2007 Motion for Summary Judgment. (Doc. No. 30). Plaintiffs Harvey and Beth Ann Dusseau filed their Response on July 17, 2007.[1] The Court held a motion hearing on December 7, 2007. For the following reasons, the Court DENIES Defendant's motion.

## I.    BACKGROUND

This case arises from Plaintiff Harvey Dusseau's ("Plaintiff") injury while disassembling a crane owned by Defendant.

On September 9, 2004, Plaintiff, a journeyman ironworker employed by Douglas Steel, was working at the Oakwood Hospital site in Detroit, Michigan. (Plf. Br. Ex. C, Dusseau Dep. at 11). Plaintiff's job on that day was to help disassemble Defendant's Manitowoc 555 crane which had been leased by Douglas Steel. (*Id.* at 33; Def. Br. Ex. B, Bedore Dep. at 18). Plaintiff was working

---

[1] The Court notes Beth Ann Dusseau is no longer listed as a Plaintiff in the Amended Complaint. (*See* Doc. No. 48).

with his partner, David Putnam, a fellow journeyman ironworker, at the time of the injury. (Dusseau Dep. at 32). Rick Bedore, the supervisor of crane disassembly, was employed by Defendant. (*Id.* at 34; Bedore Dep. at 31).

To disassemble the crane, the four outriggers must be swung out from the crane and held in place by a locking pin. (Dusseau Dep. at 35-37; Plf. Br. Ex. A, photo of locking pin; Plf. Br. Ex. B, photo of outrigger leg in position). Before Plaintiff's injury, Putnam secured one of the outriggers. (Dusseau Dep. at 48-52; Plf. Br. Ex. D, Putnam Dep. at 34). This was accomplished by Putnam removing the locking pin, swinging out the outrigger leg while Plaintiff stood behind him awaiting instructions from Putnam. (Dusseau Dep. at 51; Putnam Dep. at 34). Once Putnam had the outrigger close to the right position, he inserted the locking pin and then told Plaintiff which way Plaintiff needed to move the outrigger for proper alignment. (Putnam Dep. at 34-35). After Putnam successfully inserted his pin into the outrigger, locking that side into place, Plaintiff went to the opposite side of the crane with Putnam behind him, essentially switching their positions. (*Id.* at 36). At this time, Plaintiff was going to insert the pin into the outrigger while Putnam stood behind him and awaited instructions as to whether to move the outrigger. (Dusseau Dep. at 51-53; Putnam Dep. at 37). Also standing right behind Putnam was Rick Bedore. (Dusseau Dep. at 58, 61; Putnam Dep. at 45).

Plaintiff alleges that when the pin would not go into the hole, he needed to find out what was keeping the pin from being inserted. (Dusseau Dep. at 54; Putnam Dep. at 37). Plaintiff then put his right hand on the ground and his left hand on top of the outrigger near the hole to steady himself. (Dusseau Dep. at 47-48, 54-55; Putnam Dep. 38-39). At this point, Plaintiff alleges that Bedore moved the outrigger without warning resulting in a scissoring action between the outrigger and

another metal object which cut off the end of Plaintiff's third finger on his left hand. (Dusseau Dep. at 56-58, 64; Putnam Dep. at 37). Bedore denies that he had any involvement with Plaintiff's injury. (Bedore Dep. at 41-42).

Plaintiff was taken to a medical clinic by Ed Heilman, the union steward. (Dusseau Dep. at 58; Def. Br. Ex. C, Heilman Dep. at 20). The clinic instructed Plaintiff to go to the hospital to receive treatment. (Dusseau Dep. at 58; Heilman Dep. at 25). Plaintiff and Heilman then traveled back to Oakwood Hospital, yet, the doctors were unable to reattach the piece of amputated finger because too much time had passed. (*Id.*).

On May 25, 2006, Plaintiff and his wife filed the instant suit alleging one count of negligence and one count of loss of consortium. Plaintiff alleged in his original complaint that Bedore was responsible for moving the outrigger with his foot. (Compl. ¶ 12).

On October 17, 2006, Plaintiffs and Defendants stipulated to a dismissal of Defendant Castelton Equipment Company. (Doc. No. 17).

On August 30, 2007, Plaintiff filed an Amended Complaint which alleged that Bedore moved the outrigger and omitting the detail that the movement was caused by Bedore's foot. The Amended Complaint does not allege a loss of consortium nor list Plaintiff's wife as a plaintiff.

## II. ANALYSIS

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine

issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must

4

set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Negligence Claim**

In Michigan, a plaintiff must prove four elements to establish a *prima facie* case of negligence: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damages. *Henry v. Dow Chemical Co.*, 473 Mich. 63, 71-72 (2005). Defendant contends Plaintiff's claim of negligence fails as he cannot establish proximate cause and his theory is merely speculation and conjecture.[2]

It is well settled that Michigan has rejected the maxim of *res ipsa loquitor*. The Michigan Supreme Court has explained,

> This court has not adopted the rule of *res ipsa loquitor*; we have uniformly held that the happening of the accident alone is not evidence of negligence; and we have as uniformly held that negligence may be established by circumstantial evidence, and that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a *prima facie* case is made.

*Burghardt v. Detroit United Railway*, 206 Mich. 545, 546-47 (1919). Although the plaintiff bears the burden of proof, he "is not required to produce evidence that positively eliminates every other potential cause. Rather, the plaintiff's evidence is sufficient if it establish's a logical sequence of

---

[2] The Court recognizes that to the extent Defendant argues Plaintiff's Complaint alleges a different theory of the sequence of events than he argues in response to the instant motion, Plaintiff has amended his Complaint after discovery to reflect that he no longer believes Bedore moved the outrigger with his feet. (Am. Compl. ¶ 10).

cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Skinner v. Square D Co.*, 444 Mich. 153, 160-61 (1994) (internal quotation omitted). Further, "a *prima facie* case of negligence may be established by use of legitimate inferences, as long as sufficient evidence is introduced to take the inferences 'out of the realm of conjecture.'" *Berryman v. K-Mart Corp.*, 193 Mich. App. 88, 92 (1992) (citation omitted). Proximate cause is generally a question of fact for the jury and summary disposition is only appropriate in exceptional cases where "reasonable minds could not differ." *Derbeck v. Ward*, 178 Mich. App. 38, 44 (1989); *see Skinner*, 195 Mich. App. at 670.

>Plaintiff testified to the following:
>
>Swung the outrigger out, tried to insert the lock pin. It would not go. It was where it should be. You can tell by the lock brackets that its close. . . . as long as it's close, you can manipulate it a little bit and it will work its way down. Something was off. Something was stopping it. And a hand up top, put a hand on the ground, looked underneath to see if I could see a problem, a big chunk of dirt, a chunk of mud, something that would obstruct the hold. I had not been there under two seconds. I doesn't even recall looking up in the hold. I don't even recall getting that far. I put a hand up top, I looked and it swung.

(Dusseau Dep. at 54:15-25, 55:1-2). Plaintiff did not see what cause the outrigger to swing. (*Id.* at 55). Plaintiff explained that his hand was not in the hole when the injury occurred and that "all four fingers were actually over the edge [of the outrigger]. When I was resting on it, all four fingers were upon the outrigger. When I felt it start to move, I jerked my hand out – jerked my hand back out of there, and it just caught the ends." (*Id.* at 56:1-6). Plaintiff testified that he believes his finger was caught between the outrigger and "whatever the outrigger scissored underneath. I didn't – at that point I was looking at my hand. I wasn't looking at the rig." (*Id.* at 56:9-11). Plaintiff placed Putnam behind him to the right, while Bedore was nearly next to Putnam. (*Id.* at 61-62).

Putnam testified that he was behind Plaintiff when the injury occurred. (Putnam Dep. at 44-

6

45). Putnam also explained that Bedore was behind him. (*Id*. at 45). Putnam stated that although he did not "actually see" Bedore move the outrigger until after it happened, he further explained that "I seen [Bedore] just as – you know what I mean? It was all at once. As he moved it, then [Plaintiff] jumped and he jumped back." (*Id*. at 50:19-21). Putnam confirmed that he had seen Bedore out of the corner of his eye and had also seen Bedore with his hands on the outrigger immediately after the injury. (*Id*. at 51).

Bedore stated on the date of the accident that he moved a platform on the crane "so that the pins could line up to lock the outrigger in place." (Bedore Dep. at 58:23-24). The ironworker, who Bedore could not describe, was having a problem getting the pin into the hole. (*Id*. at 59). Bedore testified that he warned the ironworkers before he moved the platform but did not recall the ironworkers acknowledging his warning. (*Id*. at 59-60). Bedore also explained that the ironworkers did not ask for help to move the platform to get the pin lined up. (*Id*. at 60). Bedore stated that he did not remember anyone being hurt after the pin was inserted. (*Id*. at 61).

Defendant argues that Plaintiff's claim should be dismissed because he has alleged three different theories of how he sustained his injury, including telling Heilman on the way to the hospital that he sustained his injury when driving pins out of the boom section of the crane. (Heilman Dep. at 24). Further, Defendant argues that because Plaintiff's expert testifies that Plaintiff must have had his finger in the hole to sustain his injury and Plaintiff testifies his finger was not in the hole, Plaintiff's claim is mere conjecture.

Viewing the record in a light most favorable to Plaintiff, the Court finds Plaintiff has produced corroborating evidence that his explanation of the accident, that he was injured by the outrigger, and that Bedore was involved.. (*See* Plf. Br. Exs. F, witness statement; Ex. G, report of injury; Ex. H, accident report). Plaintiff has set forth a logical sequence of events which could have

7

led to his injury and supported this theory with evidence in the form of deposition testimony. *Skinner*, 444 Mich. at 160-61.

Plaintiff and Defendant's experts agree that Plaintiff's injury, as described, could only have occurred if his finger was in the outrigger's pinch point, namely the lock pin's hole. Plaintiff's testimony places his finger at least next to the hole, and Putnam's testimony corroborates Plaintiff's verison of the facts including Bedore's role in the accident. Finally, although Bedore denies any involvement in the accident, Bedore's testimony reveals he moved a piece of the crane while two ironworker's attempted to insert a lock pin into the outrigger. This fact also corroborates Plaintiff's theory of injury.

For these reasons, the Court finds that Plaintiff has shown sufficient evidence to remove his theory from mere speculation and conjecture. Therefore, as Plaintiff has evidenced a genuine issue of material fact as to the proximate cause of his accident, and summary judgment is inappropriate.

### III. CONCLUSION

For all these reasons, the Court **DENIES** Defendant's Motion to for Summary Judgment. (Doc. No. 30).

**SO ORDERED**.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: December 18, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 18, 2007.

S/Denise Goodine
Case Manager